The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Glenn. The appealing party has shown good ground to reconsider the evidence. The Full Commission rejects the Deputy Commissioners Opinion and Award and enters the following
************
The Full Commission finds as fact and concludes as a matter of law the following, which were entered into by the parties at the hearing as
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission, and are subject to the provisions of the North Carolina Workers Compensation Act.
2. An employer-employee relationship existed between defendant-employer and plaintiff-employee at all times relevant herein.
3. Wausau Insurance Company was the carrier on the risk for the workers compensation insurance at all times relevant herein.
4. The parties stipulated at the hearing, that plaintiffs average weekly wage was $482.33 per week, yielding a compensation rate of $321.57, at the relevant times herein.
5. The following Industrial Commission Forms and Orders were received into evidence: (1) Form 19, dated 24 May 1993; (2) Form 33, dated 24 May 1995; (3) Form 18s, dated 21 June 1994 and 25 May 1995; (4) Form 61, dated 25 May 1995; (5) Form 21, dated 29 June 1993; (6) multiple Form 26s; (7) Form 28B, dated 11 April 1994; and (8) Form 33R, dated 23 June 1995.
6. Plaintiffs medical records from: (1) D. S. Walker, M. D., of the Kernodle Clinic; (2) Alamance Health Services Physical Department; (3) Burlington Orthopaedic Hand Center; (4) Piedmont Rehabilitation Physical Therapy; (5) Bull Durham Rehabilitation Associates; (6) Durham Clinic; and (7) Rehability Center.
7. The issues to be determined by the Deputy Commissioner were: (a) whether plaintiffs claim for a neck injury is compensable and (b) whether plaintiffs claim for a right carpal tunnel syndrome is compensable.
************
The Full Commission rejects the finding of fact made by the Deputy Commissioner and instead finds as follows
 FINDINGS OF FACT
1. On 21 May 1993, plaintiff was working for defendant-employer when she injured her left arm transferring an electric motor from a conveyor line to a testing machine. Plaintiff reported her injury to her supervisor, Mr. ONeal Nolan. Plaintiff told Mr. Nolan she was having swelling and numbness in her left arm and her left hand had the feeling of going to sleep. Mr. Nolan completed the injury investigation report on 21 May 1993. The report did not reflect plaintiff had injured or experienced any pain in her neck as a result of the incident.
2. Plaintiff sought medical care on 24 May 1993 from D. S. Walker, M. D., of the Kernodle Clinic in Mebane, North Carolina. Dr. Walkers notes reflect plaintiff gave a history of having pain from her shoulder down to her hand. However, plaintiff did not mention any neck pain. Dr. Walker diagnosed plaintiff with overuse syndrome, left shoulder and wrist tendonitis, and multiple strains. Plaintiff saw Dr. Walker again on 28 May, 7 June, 14 June, 15 June, 21 June, 30 June, 12 July, and 27 July 1993. However, on none of these eight occasions did Dr. Walker note that plaintiff injured or felt any pain in her neck as a result of the incident of 21 May 1993.
3. Thereafter, plaintiff was referred to Christopher E. Smith, M. D., an orthopaedist at the Burlington Orthopaedic Hand Center for evaluation of her left arm pain. Dr. Smith saw plaintiff on 30 July 1993 at which time he noted plaintiff was having pain in her left forearm. Dr. Smith also noted plaintiff was having discomfort in her neck and he thought she might have a cervical radiculopathy. This is the first mention of any neck pain. Dr. Smith referred plaintiff to the Guilford Neurologic Associates for EMG testing and a cervical MRI.
4. The EMG testing and cervical MRI performed at the Guilford Neurologic Associates showed no evidence of cervical radiculopathy, neural compression or damage to any of plaintiffs cervical discs. Dr. Smith attributed plaintiffs neck and shoulder pain to muscle and ligament strain due to lifting the heavy motor. The MRI confirmed plaintiff had degenerative disc disease.
5. The EMG testing verified plaintiff had significant median and ulnar nerve entrapment in her left wrist. Dr. Smith, based on these studies, performed carpal tunnel surgery to plaintiffs left arm on 21 October 1993. Dr. Smith kept plaintiff out of work following the carpal tunnel surgery and authorized her to return to light duty work in November 1993. Dr. Smith allowed plaintiff to return to her normal work duties in January 1994, with a 15 pound lifting restriction. Defendants have paid plaintiff all temporary total disability benefits to which she is entitled to receive as a result of her left hand carpal tunnel.
6. Plaintiff returned to work for defendant-employer in January 1994 in defendant-employers subassembly department. This was not a physically strenuous job and was compatible with Dr. Smiths work restrictions. Plaintiff worked in this position from January through July 1994 without reporting any pain or discomfort in her neck to her supervisors or physicians.
7. Plaintiff saw William S. Somers, M. D., of the Durham Clinic in July 1994 complaining of neck and left arm pain. Dr. Somers impression was that plaintiff had cervical disc disease with possible left radiculopathy. Plaintiff told Dr. Somers her left arm pain started in her neck on 21 May 1993. Significantly, plaintiff did not give this history to any of the doctors who previously treated her. Dr. Somers referred plaintiff to Dr. Kihlstrom for a neurosurgical consultation.
8. On 18 August 1994, plaintiff requested medical leave from defendant-employer due to neck pain. Plaintiff was provided a disability medical leave form to take to the Durham Clinic. This form would provide the appropriate authorization for her to be out of work. Plaintiff never returned this form to defendant-employer. Plaintiff left work without authorization on 17 August 1994. Plaintiff did not contact defendant-employer after August 1994 in regard to returning to work.
9. Dr. Kihlstrom began treating plaintiff in August 1994. He recommended a cervical myelogram and EMG studies to determine the extent of plaintiffs neck problems. These studies confirmed plaintiff had degenerative disk disease. Dr. Kihlstrom recommended a hemilaminectomy at C6-7 and a laminectomy at C5-6 due to plaintiffs degenerative disk disease. Plaintiff told Dr. Kihlstrom that when she lifted the motor on 21 May 1993 she felt a pop in her neck followed by severe neck pain. Significantly, once again, plaintiff gave a medical history that she had never before given to any of the physicians who had previously treated her.
10. Dr. Kihlstrom performed neck surgery on 25 October 1994. Thereafter, Dr. Kihlstrom continued to treat plaintiff and eventually recommended a work hardening program and a functional capacity evaluation to determine her work abilities. The functional capacity evaluation revealed that plaintiff was capable of light to medium work as of 25 January 1995. Accordingly, Dr. Kihlstrom was of the opinion that plaintiff was capable of returning to work within those work restrictions as of 25 January 1995.
11. Dr. Kihlstroms opinion is that the 21 May 1993 incident, as described to him by plaintiff, aggravated her degenerative neck condition such that she ultimately needed surgery. However, Dr. Kihlstrom also indicated that someone with a degenerative neck condition does not have to experience a precipitating event for the condition to become painful. Because Dr. Kihlstrom was given an inaccurate history by plaintiff, his opinion causally relating plaintiffs neck condition to her injury of 21 May 1993 is given little weight.
12. Dr. Hynninen of the Bull Durham Clinic began treating plaintiff in January 1995. He indicated that as of January 1995 plaintiff had symptoms consistent with carpal tunnel syndrome in her right hand and arm. In May 1995, Dr. Hynninen noted plaintiffs EMG studies showed improving signs. Dr. Hynninen did not treat plaintiff after May 1995.
13. Thereafter, Dr. Smith examined plaintiff on 1 November 1995 for an evaluation of plaintiffs continued complaints of left hand and wrist pain. Dr. Smith stated plaintiffs physical examination and nerve conduction velocity studies showed nothing that would indicate she was having a continued problem with her left wrist or hand. Furthermore, he noted that all examinations were within normal limits and that had a successful carpal tunnel release. Dr. Smith authorized plaintiff to resume all normal activities and noted she had no work restrictions.
14. In 1997, plaintiff underwent diagnostic studies ordered by Dr. Kihlstrom to determine whether plaintiff had right arm carpal tunnel syndrome. The electrodiagnostic studies reflected that plaintiff was at or near normal results in her right arm. Dr. Kihlstrom noted that plaintiff had symptoms of carpal tunnel syndrome, but he did not recommend surgery.
15. Although plaintiff testified at the hearing before the Deputy Commissioner that on 21 May 1993 she felt a pop in her neck followed by the onset of severe neck pain as she was transferring a motor from a conveyor belt, her testimony is not credible based on the greater weight of the evidence including the contradictory histories given and the medical records which do not support plaintiffs contention. Furthermore, although there are witnesses who may appear to corroborate plaintiffs testimony, they lack credibility in that they are not disinterested and their testimony is, in part, a recount of the history as told by plaintiff that lacks credibility.
16. Plaintiff was unable to work in any capacity from 18 August 1994 until 25 January 1995 due to her neck condition and resulting surgery.
17. Greater weight is given the opinions of Dr. Smith than to those of Dr. Kihlstrom given the fact that Dr. Smith treated plaintiff for symptoms of neck, shoulder and arm pain directly following the compensable accident of 21 May 1993. Dr. Smith indicated that as of August 1993 there was no evidence of cervical radiculopathy or pinched nerve in plaintiffs neck and plaintiffs MRI did not show a neural compression. Furthermore, Dr. Smith found no evidence of an acute trauma or damage to any of plaintiffs cervical disks. Dr. Smith merely attributed plaintiffs neck and shoulder discomfort to muscle and ligament strain. Additionally, Dr. Smith was of the opinion that between August 1993 and February 1994 there was no medical reason for plaintiff to undergo neck surgery. Most importantly, he indicated that the surgery performed in October 1994 by Dr. Kihlstrom was not related to the May 1993 compensable incident.
18. The functional capacity evaluation report recommended by Dr. Kihlstrom verified plaintiff was capable of returning to light to medium work effective 25 January 1995. Defendant-employer has had work available to meet any work restrictions plaintiff has had since 17 August 1994. Plaintiff, by her own admission, has not contacted defendant-employer to request if she could return to work since she left her employment in August 1994. Furthermore, plaintiff has not attempted to locate employment since being authorized to return to light or medium work in January 1995.
19. Dr. Smith determined that plaintiffs job duties as of May 1993 placed her at an increased risk as compared to the general public of developing carpal tunnel syndrome. However, Dr. Smith was unable to state whether plaintiffs job duties caused or significantly contributed to her development of carpal tunnel. On the other hand, Dr. Hynninen determined that plaintiff was not only at an increased risk of developing carpal tunnel syndrome based on her job duties with defendant-employer but also that her job duties were the cause of her developing right carpal tunnel symptoms.
20. Based on the greater weight of the evidence, plaintiffs employment with defendant-employer caused or significantly contributed to plaintiffs development of carpal tunnel syndrome. Furthermore, plaintiffs employment with defendant-employer placed her at an increased risk as compared to the general public of developing carpal tunnel syndrome. Plaintiff has been compensated for her left-sided carpal tunnel syndrome through the approved Form 21 Agreement and has suffered no disability for that condition since returning to her regular employment in January 1994. Although plaintiff has since developed right-sided carpal tunnel syndrome as a result of her employment, this condition has not resulted in any disability or caused a loss of wage earning capacity. Rather, plaintiffs inability to work beginning in August of 1994 is the result of her neck condition which is unrelated to her employment with defendant-employer.
************
Based on the foregoing findings of fact, the Full Commission concludes as follows
 CONCLUSIONS OF LAW
1. As a result of plaintiffs injury by accident on 21 May 1993, the parties entered into a Form 21 agreement in 1993 for injuries associated with plaintiffs left arm. The Form 21 encompassed only injuries to plaintiffs left arm/hand and did not include problems or injuries associated with plaintiffs right arm/hand or neck conditions. Accordingly, plaintiff is not entitled to a presumption of continuing disability for her right arm/hand or neck. Kisiah v. W. R. KisiahPlumbing, Inc., 124 N.C. App. 72, 476 S.E.2d 434 (1996), disc. reviewdenied, 345 N.C. 343, 483 S.E.2d 169 (1997).
2. Plaintiff did not sustain a neck injury including her herniated disc as a result of her compensable injury by accident, which occurred 21 May 1993. The neck surgery performed by Dr. Kihlstrom and plaintiffs subsequent period of disability resulted from plaintiffs degenerative neck condition and were not related to her employment with defendant-employer. N.C. Gen. Stat. 97-6(2).
3. Plaintiffs job placed her at an increased risk of developing carpal tunnel syndrome. Furthermore, her employment caused or significantly contributed to the development of her right-sided carpal tunnel syndrome. N.C. Gen. Stat. 97-53.
4. However, plaintiff has failed to establish that she has suffered any periods of disability for which she is entitled to receive benefits for her right arm/hand carpal tunnel symptoms. N.C. Gen. Stat. 97-6(2) and97-29.
5. Subject to the limitations of N.C. Gen. Stat. 97-25.1, plaintiff is entitled to payment of all reasonably necessary medical expenses which tend to effect a cure, provide relief, or lessen the period of disability incurred as a result of any carpal tunnel symptoms associated with her right arm/hand which were caused by her employment with defendant-employer. N.C. Gen. Stat. 97-25.1 and 97-25.
************
Based on the foregoing findings of fact and conclusions of law, the undersigned enters the following
 AWARD
1. Plaintiffs workers compensation claim for neck complaints must be and the same is hereby Denied.
2. Although plaintiff suffers from right arm/hand carpal tunnel symptoms, an occupational disease with in the meaning of the Act, plaintiff shall receive no weekly indemnity benefits as she has failed to establish that she has suffered any periods of disability for her right carpal tunnel condition.
3. However, subject to the limitations of N.C. Gen. Stat. 97-25.1, defendants shall pay for all reasonably necessary medical expenses which tend to effect a cure, provide relief, or lessen the period of disability incurred or to be incurred by plaintiff as a result of her compensable right arm/hand carpal tunnel syndrome when bills for same have been submitted and approved in accordance with Commission procedure.
4. Defendants shall pay the costs of this action.
This ____ day of August, 2000.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/____________ RENÉE RIGGSBEE COMMISSIONER
DISSENTING:
S/________________ BERNADINE BALLANCE COMMISSIONER